## Case No. 13,208.

SPARKMAN et al. v. HIGGINS et al.

[1 Blatchf. 205; 5 N. Y. Leg. Obs. 122; 6 Pa. Law J. 344; Fent. Pat. 122; Merw. Pat. Inv. 701; 1 Fish. Pat. Rep. 110.][1]

Circuit Court, S. D. New York. Oct. Term, 1846.

PATENTS—INJUNCTION— MOTION TO DISSOLVE— SALE OF PATENTED ARTICLE—INVENTOR —OFFICERS OF PATENT OFFICE.

1. On a motion, on affidavits, to dissolve an injunction in a patent suit, the defendant's proofs must overcome the equity of the bill and the evidence in its support, or the motion will be denied.

2. Although the papers on an application for a patent are returned from the patent office for informality, yet, if the application is followed up with reasonable diligence, and the patent is granted, the right of the patentee will not be defeated, although he sold the patented article after his application and before the granting of his patent.

3. To constitute an inventor, it is not necessary he should have the manual skill to make drawings. If he furnishes the ideas to produce the result, he is entitled to avail himself of the mechanical skill of others to carry out his contrivance in practice.

[Cited in Smith v. Stewart, 55 Fed. 483.]

4. An applicant for a patent cannot be prejudiced by the failure of the officers of the patent office to give information of his application to a person who makes inquiry there in regard to it.

[Cited in Re Cushman, Case No. 3,514.]

In equity. This was a motion before Judge BETTS, sitting in the circuit court, to dissolve an injunction. The plaintiffs [Sparkman and Kelsey] were the patentees, under the act of August 29, 1842 (5 Stat. 543), of a patent, issued July 24th, 1846, for a design for floor oil-cloth, called "The Gothic pavement pattern." The bill alleged an infringement by the defendants Higgins & Co., by selling, and by the defendants, C. & E. Harvey, by making oil-cloths of the patented pattern. An injunction was granted on the bill, and this motion to dissolve it was made on affidavits.

The defendants showed, that in January, 1846, one Smith, of Baltimore, saw a sample of the pattern at the plaintiffs' store in New-York, and was informed that it was on sale,

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission. Merw. Pat. Inv. 701, contains only a partial report.]

but not ready for delivery; that he ordered a quantity, which was sent to him on the 16th of March, and was immediately sold at Baltimore; that Higgins & Co. procured from Baltimore enough to show the pattern, and the Harveys, on seeing it, immediately prepared blocks for printing it, which were ready about the 23d of May, when they proceeded to print. They also showed that Rice & Sampson of Hallowell, Maine, saw the pattern at Baltimore, in May, went to the patent office at Washington, and were there informed that it was not patented, procured the pattern, took it to their works in Maine, made the blocks for printing it, and proceeded to print from them, prior to the date of the patent. The defendants also set up, that the design was the invention of one Berry, a workman in the plaintiffs' employ, and made oath that when they got the pattern they did not know it was patented or that the invention was claimed by the plaintiffs.

The case on the part of the plaintiffs was this: Kelsey was a practical manufacturer and designer of patterns. Sparkman was familiar with the styles of the trade. They would discuss together the subject of patterns and inform Berry of their wishes, and criticise and suggest, while the patterns were being designed. Berry had been instructed by Kelsey in the art of getting up patterns. In the summer of 1845, Kelsey proposed to Berry to get up a pattern of the kind afterwards patented. Berry did so, but the plaintiffs, on seeing it, disapproved of it, and suggested alterations and improvements. These were adopted by Berry in a new pattern which was substituted for the first one, and was the one patented. In January, 1846, a sample was printed and sent to the plaintiffs' store to be exhibited for the sale of goods by orders. Higgins & Co. saw it there and were told by Kelsey that it was some of their patent goods. Soon afterwards Smith saw it, and was told by Kelsey it was some of their registered patterns, a term to denote goods of designs patented or intended to be. Smith ordered a quantity, to be delivered as soon as possible. On the 20th of February the plaintiffs' application for a patent for the design was received at the patent office. But the papers, being informal, were amended and sworn to anew, and the application was renewed on the 23d of March. On the 22d of June the papers were again returned as informal, and were then corrected and filed again on the 14th of July. The patent was then issued.

Seth P. Staples, for defendants.
Daniel Lord, for plaintiffs.

BETTS, District Judge. The plaintiffs have an injunction, granted on their bill of complaint. The defendants move to discharge it, on affidavits; and unless their proofs overcome the equity of the bill, and the evidence supporting it, the motion must

be denied. They may make out a different case at the final hearing; but this motion must depend on what is now presented to the court.

The study of the courts has recently been, and especially since the patent acts of 1836 and 1839 [5 Stat. 117,353], to carry out the protection of the law to inventors, so as to secure to them the full benefit of their inventions. An inventor is bound to notify the public of his claim, by a caveat or application filed at the patent office, designating his discovery, and what he means to secure to himself. This is a matter often of nicety, and men of great experience encounter difficulties in preparing their papers. Correspondence ensues between the officers at Washington and the patentee, which consumes time. But if the claim thus put forward, although originally informal, be followed up with reasonable diligence, and if, eventually, the patent is granted, it prevents any right being acquired by strangers interfering in the mean time. Here, the first application, the claim to the invention, was made on the 13th day of February. It was again made on the 23d of March, and the papers were retained by the patent office until the 22d of June. They were then sent to New-York, and returned, with other and correct papers, on the 14th of July, and the patent in suit was granted on the 24th of July. It is not for the court now to examine critically the correctness or even sufficiency of the application; as it was made to all appearance in good faith, and was an attempt to make known and secure the claim.

It is next contended that Berry was the inventor and not the plaintiffs; which position, if established, would be a good ground to dissolve the injunction. The defendants lay before the court the declarations of Berry, in connection with his working without any draft, design or model before him, which, the defendants insist, proves him to be the inventor. But, on the other hand, Mr. Kelsey details very minutely the suggestions he made, his superintendence, his suggesting alterations in a design got up, his disapproving that, and the adoption of his views in the design now patented. And Mr. Berry gives his own account of the matter, and explains the declarations attributed to him, as referring to his working without a copy before him, and to the design being an original and not a copy. He does not intimate that he did not receive suggestions, alterations and directions from Mr. Kelsey, which were carried out in this design. To constitute an inventor, it is not necessary he should have the manual skill and dexterity to make the drafts. If the ideas are furnished by him, for producing the result aimed at, he is entitled to avail himself of the mechanical skill of others, to carry out practically his contrivance. Here the devising of the pattern, in this sense, appears to have been by the plaintiffs.

Again. It is contended that the plaintiffs have abandoned their claim, or so dealt with it as to give it to the public. This, if made out, would also entitle the defendants to succeed. They first rely on the sale to Smith, who gave an order for goods on seeing the pattern, in January, which the plaintiffs agreed to execute. But an inventor may do this. He may stipulate for a sale of his invention, before it is completed, without vitiating his claim; and these goods were not delivered until after the application of the 13th of February was filed in the patent office.

It is urged, also, that Rice & Sampson purchased goods of the pattern in question, at Baltimore, in April, and applied at Washington to know if it was patented, and were informed that it was not. This was true. But they do not say that they inquired if a patent had been applied for, and whether an application was pending. There was then an application there, with a specimen of the drawing of the design. If the commissioner or the officers had even overlooked it, that would not have defeated the plaintiffs' right. They had, in good faith, made their claim, and were at the time following it up, and eventually matured it. The sale did not defeat the right to the design.

It also appears that when the goods were shown in January, they were shown as the patent goods, or the registered patterns of the plaintiffs. Now, although registered patents or patterns is not a term of law, yet it may well have indicated a pattern as claimed to be of their design, and one for which they were preparing to take out a patent.

The defendants have not made out a case to dissolve the injunction, and the motion must be denied, with costs.

[For hearing on a motion for an attachment for an alleged violation of the injunction, see Case No. 13,209.]