## Hicks vs. Williams.

If a chattel mortgage is filed in the clerk's office of the town in which the mortgagor resided at the time of its *execution*, that is sufficient; whether the mortgagor be a resident of that town at the time of *filing* the mortgage, or not.

The statute contains no direction as to the time within which a chattel mortgage shall be filed; and in the absence of any such provision the courts have no power to supply the deficiency, or to declare a mortgage void because of its not having been filed at the time it was executed.

Yet if creditors, or *bona fide* purchasers, should acquire rights in the property mortgaged, before the filing of the mortgage, the lien of the mortgage will be postponed to such rights.

There is no statute now in force requiring canal boats or scows, while navigating the canals or the Hudson river, as such, to be registered in the offices of the collectors of customs of the United States.

A canal boat or scow is not a "*vessel of the United States*," within the meaning of the act of congress declaring that no bill of sale, mortgage, &c. of any vessel or part of a vessel of the United States, shall be valid, unless the same shall be recorded in the office of the collector of the customs where such vessel is registered or enrolled.

Nor will the fact, that a canal scow happens to be navigating the Hudson river, on its return voyage from Brooklyn, in tow of a steamboat, change its character, or bring it within the operation of the act of congress.

THIS was an appeal by the defendant from a judgment entered upon the report of a referee. The facts sufficiently appear in the opinion of the court.

*F. Kernan*, for the appellant. I. The mortgage should have been filed at the time it was given, and not having been thus filed, was void as against the defendant, who was a purchaser in good faith, at a constable's sale. The filing is in lieu of actual change of possession, and therefore should have been immediate. (2 *R. S.* 136, §§ 5, 9, 10. *Camp* v. *Camp and others*, 2 *Hill*, 628. *Wood* v. *Lowry*, 17 *Wend.* 492, 496.) II. There is no evidence that the mortgagor lived in Schrœppel at the time the mortgage was filed; and besides, it was more than a year from the execution of the mortgage to the time of the seizure by the constable, who sold to the defendant; and a new statement should have been filed. (2 *R. S.* 136, § 11. *Fitch*

v. *Humphrey*, 1 *Denio*, 163.)    III. The vessel was navigating the waters of the United States at the time of the seizure, and had been for some time previous thereto, and was subject to the United States laws.    Therefore the mortgage should have been recorded in the custom house; and not having been thus recorded, was void as against the defendant.    (9 *U. S. Statutes at Large*, 440; *chap.* 27.)

*H. D. Sedgwick*, for the plaintiff.    I. The question as to the proper place of. filing the plaintiff's mortgage was one of fact, depending upon the residence of the mortgagor.    The referee found that he resided in Schrœppel; and his finding is conclusive.    II. One question of law only arises in this case, i. e. whether, in order to protect liens by chattel mortgage on canal boats, it is necessary to register them in the office of the collector of New-York.    This act, relied upon by the defendant, is in terms confined to *vessels of the United States*, and provides for the recording of the mortgage, conveyance, &c. in the office of the collector of customs, where such *vessel* is registered or enrolled. By the 6th and 7th sections it will be seen what description of vessels is intended.    (*Laws of U. S.*, *ch.* 27.    9 *Stat. at Large*, 440, 441.)    This is to regulate the priority of liens in the courts of the United States.    These courts, in admiralty, have jurisdiction of all ships and shipping, seamen's wages, &c., and remedies are enforced by libeling the vessels.    This jurisdiction was never extended even to our large inland lakes, until within a very few years, (Feb. 1845.)    These vessels and ships cannot be proceeded against, except in the United States courts; and the act of 1850 is not applicable to proceedings in our state courts, even if. canal boats could be held to be included in the term "vessels of the United States."    There is now no act in force for the registry of canal boats, except our state statutes regulating the canals.    It appears there was a law authorizing their being registered and licensed, or enrolled and licensed, and compelling them to pay hospital money like ships and vessels, and they were *compelled* to procure such registry and enrollment.    The fees paid went to supply the hospital fund in which

they might share. This brought them within the jurisdiction of the U. S. courts, and they could be libelled in admiralty, as for seamen's wages on ships and vessels. But authorizing the libelling of canal boats in the federal courts produced intolerable evils, and the whole law was repealed, and is so totally inapplicable to canal boats that the law is not even printed in the statutes at large. (*See* 9 *Stat. at Large, ch.* 60, *p.* 38.) All the acts in force now authorizing the registry of vessels may be found in 1 *Statutes at Large, pp.* 288, 291, 296; and it will be seen that the description of vessels which may be registered is entirely inapplicable to Podunk scows. The enrollment of steamboats is also specially provided for, showing that they were not included in the registry acts, which included only *vessels.* (2 *Stat. at Large,* 694. 4 *Id.* 129. 5 *Id.* 304.) Except this obsolete act to increase hospital money, there never was any act for registry which included canal boats, and none can now be found on the statute book. The cases of *Many* v. *Noyes and Prosser,* (5 *Hill,* 34,) *Birkbeck* v. *Hoboken Ferry Boats,* (17 *John.* 54,) *Walker* v. *Blackwell,* (1 *Wend.* 557,) and *Farmers Delight* v. *Lawrence,* (5 *Id.* 564,) are in point to show the distinction between ships and vessels, and canal boats. It would be intolerable to require all mortgages and sales of canal boats to be recorded in the New-York custom house.

*By the Court,* BACON, J. The facts of this case, as disclosed by the evidence, are substantially as follows: On the 5th of June, 1851, the plaintiff sold to one Bishop a canal boat, called "No. 80 of Podunk," and took a chattel mortgage thereon to secure some notes given by Bishop as a part of the purchase money. The mortgage was filed in the office of the clerk of the town of Schrœppel, Oswego county, on the 16th of September, 1851, where the referee finds Bishop then resided. On the 8th of July, 1852, one Patrick Gainer obtained a judgment against Bishop, upon an attachment previously issued by a justice of the peace at Kingston, Ulster county, on which the boat No. 80 was taken and sold by a constable; the defendant in this suit becoming the purchaser of Bishop's interest, upon that sale. In

the year 1852, and prior to the seizure of the boat on the attachment, she had been employed in the navigation of the Erie canal and the Hudson river, and when seized was on a return trip from Brooklyn. Default had been made in the payment of some of the notes, and the plaintiff had the right to enforce the mortgage, and duly demanded the boat of the defendant prior to the commencement of the suit. The referee reported in favor of the plaintiff, and judgment was given for $522.85, the value of the boat, and interest. On the trial various grounds of objection were taken to the right of the plaintiff to recover under this state of facts; only three of which it is important to consider in disposing of this case.

I. It was insisted on the part of the defendant, that it did not appear that the boat, or Bishop the mortgagor, were in Schrœppel at the time the mortgage was filed. But it is not necessary that any such fact should appear. The statute (2 *R. S.* 136, § 10) requires the mortgage to be filed in the several towns and cities "where the mortgagor therein, if a resident of this state, shall reside *at the time of the execution thereof.*" The referee has found as a matter of fact, and so is the evidence, that at the time of the execution of the mortgage, Bishop, the mortgagor, resided in Schrœppel, and there the mortgage was filed, in compliance with the provision of the statute. There is nothing, therefore, in this objection.

II. It was further insisted that the mortgage not having been filed *at the time it was given,* was void as against the defendant; and he, therefore, by the proceeding under the attachment and sale, acquired a right paramount to that of the plaintiff under his mortgage. The filing, it is said, is in lieu of actual change of possession, and therefore should have been immediate. The provision of the statute is in substance that every mortgage of goods and chattels, not accompanied by an immediate delivery, shall be void as against creditors or subsequent purchasers in good faith, "unless the mortgage, or a copy thereof, *shall be filed* as directed in the subsequent section." And the next section provides for the filing in the cities and towns where the mortgagor resided at the time of the execution of the mortgage.

Hicks *v.* Williams.

This is the only direction of the statute in respect to the filing, and it will be seen that it is entirely silent as to the time when the act is to be done. A subsequent section, it is true, provides that the mortgage shall lose its preference after the expiration of a year from the filing, unless, within a given time prior to the expiration of the year, a true copy shall be again filed. This, however, determines nothing as to the time of the original filing, and the question recurs, when must that be done? Must it be *eo instanti* the mortgage is executed; must it be within a week, or a month, or six months? The statute is silent as to this, and it would be but judicial legislation to prescribe an arbitrary rule on this subject. We can see some inconveniences which result from the absence of such a provision, and it would doubtless have been better for the legislature to have fixed some limit in the act, within which the duty of filing must be performed, but, in the absence of any such direction, we do not see that we are authorized to supply the deficiency. If the rights of creditors or *bona fide* purchasers should intervene, then·it is doubtless the rule that the lien of the mortgage must be postponed to such rights; but no such case is presented here. The mortgage was duly on file in Sept. 1851, many months before the judgment under which the defendant's claim was recovered; and he was legally chargeable with notice of the fact, and therefore took subject to the plaintiff's right to enforce his lien under the mortgage. This objection, therefore, we think cannot be sustained.

III. It is finally objected to the plaintiff's right of recovery, that inasmuch as the boat was navigating the Hudson river at the time of the seizure, she was a "vessel of the United States," and came within the provisions of the law requiring the mortgage to be recorded in the collector's office at New-York, and that no proof having been given of any such registry, the mortgage was void as against the defendant. This point was argued with zeal and ingenuity, and if well taken, will prove of serious consequence to a large class of securities held upon canal boats navigating our inland waters, and performing occasional trips upon the Hudson river. The provision on this subject to which we are referred is in the act of congress passed July 29, 1850, and

found in the 9th volume of the U. S. Statutes at Large, p. 440, &c. The first section is as follows : " No bill of sale, mortgage, hypothecation, or conveyance of any *vessel,* or part of a *vessel of the United States,* shall be valid, &c. unless such bill of sale, mortgage, hypothecation or conveyance be recorded in the office of the collector of the customs where such vessel *is registered or enrolled.*"

Upon this section two inquiries arise. (1.) Is a canal boat required to be registered or enrolled? and (2.) Is she within the description of " a vessel of the United States ?"

1. By an examination of the general scope and provisions of the registering acts, it appears to us quite obvious that an ordinary canal boat or scow, as the boat in question was, could never have been designed to be embraced within the class of vessels concerning which a registry and enrollment is required. Without particularizing these provisions, it may be enough to say that the first act on this subject is one entitled "An act for *registering* and *clearing vessels,* regulating the *coasting trade,* and for other purposes." (1 *U. S. Stat. at Large, p.* 55.) And the act which now regulates this whole subject of registry is entitled " An act concerning the registering of *ships or vessels.*" (*Id. p.* 288, *&c.*) The entire scope of the provisions embodied in this act show manifestly that it was intended to apply to vessels sailing from a port within the district of the collector in whose office she was required to be registered, and engaged in foreign voyages or in the coasting trade. There is no act that we can discover, now in force, requiring the registry of canal boats, as such, in the collectors' offices of the United States. There appears to have been such an act passed some years since, authorizing them to be enrolled for the purpose of collecting fees in aid of the hospital fund. A subsequent act, passed in July, 1846, released them from any contribution to this fund, and deprived them of the benefits created by it. (9 *Stat. at Large, p.* 38.) This act, though not in terms, yet by implication, seems to operate as a substantial repeal of the former act, the passage of which affords very pregnant proof that such boats were not

Hicks *v.* Williams.

deemed to be within the provisions of the registering act then and still in existence.

2. We are quite clear that canal boats do not come within the description of "vessels of the United States." A steamboat, when her capacity, dimensions, and the power and extent of her navigability is considered, would seem to come much more naturally within this definition, and yet the enrollment of steamboats is specifically provided for by the laws of the U. States. (*See* 2 *Stat. at Large*, p. 694; 5 *Id.* 304.) And under the acts of this state authorizing, in certain cases, the attachment and seizure of "any ship or vessel" within this state, it has been adjudged that a small undecked boat employed within a port, and not performing voyages coastwise from state to state, does not come within the description of a "ship or vessel," which terms are to be understood as used in common parlance and applying only to vessels of a larger class. (*Farmers' Delight* v. *Lawrence*, 5 *Wend.* 564.) And in *Many* v. *Noyes*, (5 *Hill*, 34,) it is expressly held that a canal boat running between Albany and Troy is not a ship or vessel within the meaning of the stat-. ute. The fact that the boat in question in this suit happened to be on the Hudson at the time of the seizure cannot change the rule thus well established. She was built for canal navigation, had been engaged in it during the same season, and at the time the attachment was issued was on a return voyage from Brooklyn in tow of a steamboat, a mode of navigation practised by hundreds of canal boats, which are not by such an occasional trip transmuted from their primitive and unpretending character of "Podunk scows," into the more ambitious if not more respectable class of "vessels of the United States."

On the whole, therefore, we conclude that no error was committed by the referee in this case, and the judgment must accordingly be affirmed

[OSWEGO GENERAL TERM, April 3, 1854. *Hubbard, Pratt* and *Bacon*, Justices.]