## THOMAS M. RYAN, APPELLANT, *v.* JOHN HOOK, RESPONDENT.

*United States District Court — jurisdiction of, over a libel filed against a canal boat to enforce a claim for towing it— U. S. R. S., sec. 4251—to what claims it is applicable.*

A United States District Court has jurisdiction over proceedings brought to enforce a claim made by a corporation for services rendered in towing from Hoboken to Albany a canal boat without masts or steam power, and the title acquired by a purchaser at a sale had, in pursuance of a decree made in such proceedings, is entitled to priority over a chattel mortgage upon the boat which had been duly executed and filed prior to the institution of the said proceedings.

Section 4251 of the United States Revised Statutes, providing that "no canal boat without masts or steam power which is required to be registered, licensed or enrolled and licensed, shall be subject to be libeled in any of the United States courts for the wages of any person who may be employed on board thereof or in navigating the same," does not apply to a claim for towing such a canal boat made by a corporation.

APPEAL from a judgment in favor of the defendant, rendered upon a trial before the court, without a jury, at the Oneida Circuit in March, 1880.

This was an action of replevin to recover the possession of a canal boat known as the "Wm. Roberts." The plaintiff claimed title to said boat by virtue of a sale made in September, 1878, pursuant to a decree in admiralty of the United States District Court for the eastern district of New York. The defendant's claim of title thereto was under a sale in October, 1878, upon the foreclosure of a chattel mortgage, dated August 24, 1875, and given to secure a part of the purchase-money.

The justice before whom the cause was tried found the execu-

tion, delivery and filing in due form of said chattel mortgage, and the assginment of the same to the defendant. He further found that on the 22d of August, 1878, a libel was filed in the United States District Court for the Eastern District of New York, by the Eastern Transportation Line, against said canal boat, for towing her from Hoboken to Albany; that process *in rem.* was thereupon issued to the marshal of said district, who attached the boat, served personal notice upon the owner, published a notice for all persons interested to appear and intervene, and finally, under the decree of the District Court, made upon default, sold her, and on the 12th of September, 1878, "in pursuance of said sale and said proceedings, duly executed and delivered a bill of sale" to the pur-, chaser, who subsequently transferred his right to the plaintiff; that thereupon the plaintiff took possession and held it until October 5, 1878, when the defendant took possession under said mortgage; that said mortgage was duly foreclosed, and before the commencement of this action the defendant acquired the rights of the purchaser under such foreclosure; "that said canal boat was a quarter-deck scow, and was without masts or steam power." The justice found, as matter of law, that the sale under the order of the District Court in admiralty did not cut off the mortgage under which the defendant claims, and ordered the complaint to be dismissed, with costs. Judgment having been entered accordingly, the plaintiff brought this appeal.

*Clinton & Clark*, for the appellant.

*Willard Rinkle*, for the respondent.

VANN, J.:

This case comes before us on the judgment record, exceptions to the findings and the notice of appeal, without any of the evidence. No question is raised, on the one hand, as to the validity of the chattel mortgage or the foreclosure thereof, or, on the other, as to the regularity of procedure in the District Court. The main question presented is whether the Admiralty Court had jurisdiction to seize and sell the canal boat "Wm. Roberts."

The Federal Constitution provides that the judicial power of the United States shall extend to all cases of admiralty and maritime

Jurisdiction. (Const. U. S., art. III, § 2.) This judicial power is vested in the Supreme Court and in such inferior courts as Congress may from time to time establish. (Id. § 1.) Under these provisions Congress established the district courts and conferred upon them exclusive original cognizance of all civil causes of admirality and maritime jurisdiction which is extended to all waters navigable from the sea by vessels of ten or more tons burden. (Act of Sept. 24, 1879, chap. 20, §§ 3, 9; 1 U. S. Stat. at Large, 75-77; U. S. R. S. §§ 541, 563.) After some conflict among the earlier decisions of the Federal courts, it seems now to be settled that the admirality and maritime jurisdiction of the district courts extends not only to waters where the tide ebbs and flows, but also to all navigable waters of the United States, even including a river lying wholly within the boundaries of a State, when by its connection with other waters it forms a continuous highway over which commerce may be carried on with other States or foreign countries. (*Ex parte Boyer*, 109 U. S. R., 629; *The Montello*, 11 Wall., 411; S. C., 20 id., 430; *The Daniel Ball*, 10 id., 557; *The Eagle*, 8 id., 15; *The Belfast*, 7 id., 624; *The Genesee Chief*, 12 How. [U. S.], 444; *The Magnolia*, 20 id., 296; *The R. H. Stokes*, 22 id., 48.) While the jurisdiction of the district courts over the waters traversed by the "William Roberts" cannot well be disputed, a question is raised as to the jurisdiction of those courts over a canal boat.

In the case of the *Ann Arbor* (4 Blatchf., 205), decided by Judge NELSON, in 1858, the entire opinion is as follows: "I think that the proof, including that taken in this court, leaves the question of fact doubtful whether the tubs of butter claimed not to have been delivered at the port of destination were shipped upon the canal boat at Rome as averred in the libel. The proof is too doubtful to found a decree upon it for the libellants. I am also inclined to think that the canal boat is not a ship or vessel, upon the North river, or other navigable waters within the Admiralty jurisdiction, subject to maritime liens in the Admiralty for breaches of contracts of affreightment. These boats are exclusively adapted to canal navigation. Of themselves they have no power as respects navigation upon public waters any more than a raft, an ark or a mud scow." No authority was cited and the case does not appear to have been well considered.

In *Hicks* v. *Williams* (17 Barb., 523), it was held that a canal boat or scow is not a vessel of the United States within the meaning of the act of Congress declaring that no bill of sale, mortgage, etc., of any vessel of the United States shall be valid, unless the same shall be recorded in the office of the collector of customs where such vessel is registered or enrolled. (9 U. S. Stat. at Large, 440.) The ground of this decision appears to be that only those vessels that have been registered with the collector of the district are to be deemed "ships or vessels of the United States," under the several acts of Congress in that regard. (1 U. S. Stat. at Large, 55, 287.)

In *Thackarey* v. *The Farmer of Salem* (Gilpin, 524, decided in 1834) it was held that a contract for the payment of labor on board of a vessel employed in carrying fuel to Philadelphia from the opposite shore of the Delaware river could not be enforced by a suit *in rem.* in admiralty, because, although the locality of the service was upon tide-water, the subject-matter of the service was not of a maritime nature, but was in the nature of ferriage. This case and *Harris* v. *Nugent* (3 Cir. C. C. R., 649) to the same effect, seem to have been overruled in *Murray* v. *The Ferry Boat Nimick* (2 Fed. R., 86–90); see, also, *Steamboat Cheeseman* v. *Two Ferry Boats* (2 Bond, 363); *The Gate City* (5 Biss., 200), and *Monongahela Navigation Company* v. *Tug "Bob Cornell"* (1 Fed. R., 218); *Mahoney* v. *City of Milwaukee* (Id., 611).

On the other hand the more recent cases hold, and the weight of authority seems to be, that where the services were maritime in nature, and were performed for the benefit of a canal boat without means of propulsion on board, but while it was engaged in navigating, by means of towage, the navigable waters of the United States, the Admiralty Court has jurisdiction.

In the case of *The Canal Boat E. M. McChesney* (8 Benedict, 150, decided by Judge BLATCHFORD in 1875) a cargo of oats was shipped on a canal boat lying in the Buffalo river, a navigable stream flowing into Lake Erie, to be carried to New York by way of the Erie canal and the Hudson river. The master of the boat signed a bill of lading for the cargo. While passing through the Erie canal a part of the oats were feloniously abstracted from the cargo, with the knowledge and assent of the master. On the

arrival of the boat in New York she was libeled by the consignee to recover the value of the oats not delivered. A mortgagee of the boat intervened and defended the action, objecting to the jurisdiction, and claiming that his lien was superior. It was held that the Admiralty Court had jurisdiction to enforce such a contract, although part of the service was to be performed on the Erie canal, and although the boat was built to navigate the canal and had no means of locomotion in herself, and that the lien of the mortgagee was subordinate to that of the libelant. The court said: "Whatever narrow views may at one time have prevailed, the case of *The Montello* (20 Wallace, 430) is authority for holding that a vessel moved otherwise than by the power of the wind or by steam power within herself, and thus carrying on commerce, is a subject of admiralty cognizance." This case was affirmed, on appeal, by Chief Justice WAITE, who "fully concurred" in the opinion of Judge BLATCHFORD. (*The Canal Boat E. M. McChesney*, 15 Blatch., 183.)

In *The Canal Boat Kate Tremaine* (5 Benedict, 60, decided by Judge BENEDICT in 1871) it was held that a canal boat having no masts, sails or motive power of her own, and employed in transporting freight between Albany, New York and Jersey City, is subject to a maritime lien for wharfage, enforceable in a Court of Admiralty, and that the maritime law implies a lien on a vessel from every lawful contract of the master, made for the benefit of the vessel.

In *Ex parte Easton* (5 Otto, 68), it was held by the Supreme Court of the United States that claims for wharfage against a canal boat are cognizable in admiralty. The court, through Mr. Justice CLIFFORD, said: "Nor is the nature of the service or the character of the contract changed by the circumstance that the water-craft, which derived the benefit in the case before the court, was without masts or sails or other motive power of her own. * * * Neither canal boats nor barges ordinarily have sails or steam power, but they usually have tow-lines; and it clearly cannot make any difference as to their liability for wharfage whether they are propelled by steam or sails of their own, or by tugs, or horse or mule power, if it appears that the boat or barge actually occupied a berth at the wharf or slip, at the commencement of the trip, as a resting place,

or for the purpose of loading or unloading cargo or receiving or for landing passengers."

In *The Canal Boat W. J. Walsh* (5 Benedict, 72), it was held that a lien exists upon a canal boat for towage services rendered to her in the harbor of New York, which an Admiralty Court has jurisdiction to enforce.

In *The Acadia* (1 Brown's Ad. R., 72), and *The General Cass* (Id., 334), it was held that towage services are maritime in character. To the same effect are *The Canal Boat D. C. Salisbury* (Olcott, 71); *The F. B. Nimick* (2 Fed. Rep., 86, 89).

The learned justice who decided this case at the circuit held that section 4251 of the United States Revised Statutes deprived the Admiralty Court of jurisdiction. That section is in these words: "No canal boat without masts or steam power, which is required to be registered, licensed, or enrolled and licensed, shall be subject to be libeled in any of the United States Courts for the wages of any person who may be employed on board thereof or in navigating the same." It is a re-enactment of a statute passed July 20, 1846, entitled "An act to exempt canal boats from the payment of fees and hospital money." (U. S. R. S., §§ 4587 and 4804; 9 Stat. at Large, 33.) This statute exempted the masters and owners of canal boats from the payment of any marine hospital tax, and conversely took from the persons employed to navigate such boats the right of receiving any benefit from the marine hospital fund and the right to libel for wages.

From the title, history and object of this statute it is clear that the expression "wages of any *person*" cannot mean the wages of any *corporation*, such as the libelant in the case under review appears to have been, because it obviously refers to the wages of the crew. (*United States* v. *Bowen*, 100 U. S., 508, 513.) It relieves the "fresh water sailor" from indirect taxation, and as an equivalent deprives him of certain rights that those who pay the tax enjoy. Upon comparing the statute of 1846 with its re-enactment in sections 4251, 4587 and 4804 of the Revised Statutes, it is evident that the word "person" does not include "corporation," as otherwise the act would refer to sick and disabled corporations, and prevent them from going to a marine hospital, unless the same word is used in two senses in the same statute. Moreover, persons

"employed on board" of a canal boat, such as the cook, or "in *navigating* the same," as the crew, including the driver, who is not on board, cannot include a corporation engaged in *towing* such boat. Navigating does not mean towing. "Navigate" means to steer, direct or manage a vessel, and implies that the act is done by those on board of the vessel itself. (Webster's Dict.; Falconer's Marine Dict.) "Tow" means to drag a vessel forward in the water by means of a rope attached to another vessel, and implies that the act is done by those on board of the latter. (Id.) The tug simply furnishes means of traction to the canal boat, which must be steered or navigated by those on board of her. As said by the court in the case of *The Canal Boat Kate Tremain (supra)*: "The canal boat   *   *·   *   when she avails herself of the power of a tug   *   *   *   as really and truly navigates as does the ship, and becomes liable to many of the peculiar vicissitudes which attend a ship." (See, also, *The Arctic Fire Insurance Company* v. *Austin*, 69 N. Y., 470.)

The word "wages," as used in this statute, is presumed to have been used with its ordinary meaning of compensation to a hired person for his services. In works on maritime law it is defined to be the compensation allowed to seamen for their services on board a vessel during a voyage. (Abbott on Shipping, 615; 3 Kent's Com., 185.) Thus its popular meaning and its meaning in admiralty law are substantially the same. To hold that it means towage would give it a strained and peculiar definition. A doubtful construction should not prevail in order to deprive a court of jurisdiction previously granted to it. It is clear that the district courts had jurisdiction of such cases before the passage of the act of 1846. Hence the intent of Congress to deprive them of that jurisdiction should be clear and explicit, or they should be held to still possess it. The natural construction is that Congress intended to deprive persons employed on board of a canal boat, or engaged in navigating her, of the right previously enjoyed by them, of libeling for seamen's wages; but not to deprive a steam-tug of her right to libel for towage. Before the passage of the act the crew of a canal boat, employed in the navigable waters of the United States, were, in a legal sense, seamen, liable as such to pay the hospital tax, and having the right to libel for wages, and to enjoy the benefits of the marine

hospitals. The burden and the privilege were taken away by the statute and the object stated in the title thus accomplished.

In the case of *The J. S. Woodward* (6 Fed. Rep., 636), the question presented was, whether the *crew* of a canal boat could libel for wages, and it was held that under this statute they could not, thus giving it the construction here indicated.

We think that the district court had jurisdiction, and that the sale in admiralty cut off the prior mortgage. (*The Amelie*, 6 Wallace, 18.) The same effect is given to liens for towage and other services by a statute. of this State. (Chap. 482, Laws 1862, p. 956.) The plaintiff, therefore, was in rightful possession, and the defendant was a wrong-doer in depriving him of it. Even if, through a mistake in the bill of sale, the plaintiff was in possession only as equitable owner, his right to remain in possession was good as against the defendant, and as against all the world unless it was the firm of which the plaintiff was, but the defendant was not, a member, nor in privity therewith. (*Johnson* v. *Carnley*, 10 N. Y., 570 ; *Frost* v. *Mott*, 34 N. Y., 253.)

The judgment should be reversed and a new trial granted, with costs to abide the event.

HARDIN, P. J., and FOLLETT, J., concurred.

Judgment reversed, new trial ordered, with costs to abide event.